UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CLARD E. CROSS,

    Plaintiff,

v.

M. ROGERS and DR. SHAH,

    Defendants.

Case No. 15-cv-620-JPG-RJD

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 40) of Magistrate Judge Reona J. Daly recommending that the Court grant defendant Mary Rogers's motion for summary judgment on plaintiff Clard E. Cross's claim that she was deliberately indifferent to his medical need for care of a hand laceration (Doc. 34). Cross has objected to the Report (Doc. 43), and Rogers has responded to that objection (Doc. 44).

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

In the Report, Magistrate Judge Daly noted that Cross, an inmate at Pinckneyville Correctional Center at the time, had suffered a laceration of the webbing between his thumb and index finger. The wound was almost an inch long. Cross suffered the injury on the morning of Sunday, January 5, 2014, when no doctor was on duty at the prison, but he was seen shortly afterward by Rogers, a nurse in the prison's health care unit. Rogers cleaned the wound, formed the opinion that it was less than an eighth of an inch deep, told Cross he might need stitches and called Dr. Shah to describe the wound to him. Dr. Shah told her to give Cross a tetanus shot and Tylenol and that he wanted to see Cross the following

morning. Rogers dressed the wound, gave Cross the shot and recorded in the log book that Cross was to be called to see the doctor the following day. Rogers did not take further action to ensure he was to be called *in the morning*. Rogers expected the nurse on duty the following day to be responsible for calling Cross to the health care unit.

Cross was not seen by Dr. Shah the following day because the nurse reviewing Rogers's notation in the log that morning saw that a follow-up examination had already been scheduled for a later time. As a consequence, Cross had to wait three days after his injury to be seen by a nurse practitioner, by which time it was too late to stitch his wound. The nurse practitioner noted in Cross's medical records the wound was healing on January 8, 2014, and had healed on January 15, 2014, although Cross said it was painful, continued bleeding, and took sixty days to heal.[1] Magistrate Judge Daly concluded that there was no evidence from which a reasonable jury could find Rogers was deliberately indifferent in her treatment of Cross's admittedly serious medical need or in her request for a follow-up by a doctor.

In response to the Report, Cross does not really contend that Rogers was deliberately indifferent to his medical needs by failing to stitch the wound herself. As a nurse, she was not qualified or authorized to perform that treatment. Instead, he focuses on her failure to take action to ensure he saw a medical professional who could stitch the wound within twenty-four hours of the injury, the window of opportunity for stitching a wound, after recognizing that stitches might be required. He further argues, based on medical literature, that stitches were required.

The Court has reviewed the Report *de novo* and agrees with Magistrate Judge Daly that there is no evidence from which a reasonable jury could find Rogers was deliberately indifferent to Cross's medical needs. He presented with a wound, and she evaluated it and formed the impression that Cross's

---

[1] Cross also states that the nurse practitioner told him he should have gotten stitches for his wound. Because that statement is hearsay that does not fall into any exception, the Court disregards it.

wound was relatively shallow. She consulted Dr. Shah and followed his instructions as to how to treat the wound. Rogers made an entry on the log indicating that Cross should see the doctor the following day, and relied on the medical staff on duty the following day to ensure that happened. There is no evidence to support the conclusion that Rogers's failure to specify that he should see the doctor within twenty-four hours of his injury amounted to anything more than negligence. At no point was she aware that Cross *required* stitches for his wound, although she was aware that he might. Indeed, even without stitches, Cross's wound appeared to medical staff to be healed within a few weeks, and it eventually healed completely, leaving only a scar. Furthermore, there is no evidence stitches would have hastened the healing of the wound or caused it to be less painful. Without any actual knowledge that Cross required stitches that had to be administered within twenty-four hours, she cannot be said to have been deliberately indifferent to his need to see a doctor within that time frame. The most that can be said is that she was negligent in failing to specify the time of day the doctor wanted to see Cross. In sum, Rogers's treatment of Cross and the steps she took to schedule follow-up treatment were not blatantly inappropriate where the need for stitches was uncertain.

Cross's attempt to say this case is like *Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016), is not convincing. In that case, a doctor treated an inmate patient with a ruptured Achilles tendon but initially did not follow the established medical protocol for such an injury and delayed scheduling an appointment with a specialist. *Id.* at 726. When the inmate returned a month later still complaining of pain, the doctor again refused to provide him with a splint or anything else to immobilize his injury and failed to order the surgery recommended by a specialist because it was too expensive. *Id.* at 726-27. Two years after the inmate's injury, he was still suffering pain, soreness and stiffness. *Id.* at 727. The Court of Appeals concluded that a jury could find from circumstantial evidence that the doctor knew his

3

conduct could impede the inmate's recovery and prolong his pain and could therefore be found to have been deliberately indifferent. *Id.* at 732-33.

At issue in *Petties* was a "failure to conform to basic standards of care" and a "blatant disregard for medical standards" that could lead a reasonable jury to believe the doctor was deliberately indifferent. Here, there was no such blatant disregard for any standard of care but instead immediate and appropriate care for a wound that was completely healed in, at the most, sixty days. Unlike the ruptured Achilles tendon at issue in *Petties*, there was no established protocol for Rogers to follow that *required* stitches. To the extent Cross argues that WebMD provides a protocol that Rogers did not follow, he has pointed only to an observation that treatment from a physician is "more likely needed" for certain wounds over a quarter of an inch deep or "deep wounds", but that even such wounds "may not always need to be closed by a doctor." In sum, there is simply not enough evidence for a reasonable jury to find Rogers was deliberately indifferent to Cross's medical needs.

Accordingly, the Court hereby:

- **ADOPTS** the Report in its entirety (Doc. 40);

- **OVERRULES** Cross's objections (Doc. 43);

- **GRANTS** Rogers's motion for summary judgment (Doc. 34); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   December 28, 2017**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**